J-S51041-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH ALVAREZ-PITRE | : | |
| | : | |
| Appellant | : | No. 366 MDA 2020 |

Appeal from the Judgment of Sentence Entered December 4, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007498-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH ALVAREZ-PITRE | : | |
| | : | |
| Appellant | : | No. 367 MDA 2020 |

Appeal from the Judgment of Sentence Entered December 4, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005377-2017

BEFORE:  MURRAY, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED JANUARY 29, 2021**

Joseph Alvarez-Pitre (Appellant) appeals from the judgments of sentence entered in the York County Court of Common Pleas, following his guilty pleas to drug and related offenses at two dockets, CP-67-CR-0007498-2016 (2016 Case) and CP-67-CR-0005377-2017 (2017 Case).  He avers the trial court abused its discretion in imposing aggravated-range and above-

aggravated range sentences, and in ordering his sentences to run consecutively. We affirm.

The trial court summarized the underlying facts:

> In [the 2016 Case], on October 3, 2016, . . . Appellant sold heroin, later determined to be [4.2 grams of[1]] fentanyl, [to a confidential informant[2]] in police presence in the vicinity of his residence . . . in the City of York, Pennsylvania. On October 6, 2016, police executed a search warrant on [Appellant's] residence. Inside the residence, police found packaging, a scale, cash, and a small amount of marijuana. The marijuana field[-]tested positive.
>
> In [the 2017 Case,] Appellant delivered crack cocaine to another person in the presence of police on July 19, 2017. On July 20, 2017, . . . Appellant delivered crack cocaine and heroin to another [confidential informant[3]] in the presence of police. [The next day], at approximately 3:00 p.m., the York City Police Department attempted to stop [Appellant] while he was driving[. Appellant] fled and in his attempt to elude the police drove onto a curb and drove the wrong way down a one-way street. After his car was forcefully stopped by the police, [Appellant] attempted to continue his escape on foot. Officers . . . pursued and apprehended [Appellant] in a nearby backyard. They found a quantity of crack cocaine and marijuana on his person when they apprehended him.

Trial Ct. Op. (2016 Case), 4/21/20, at 2.[4]

---

[1] N.T. Plea, 4/10/18, at 7.

[2] N.T. Plea at 7.

[3] N.T. Plea at 10.

[4] The trial court filed nearly identical opinions at the two cases. Our citations to the "Trial Ct. Op." throughout this memorandum are to the 2016 Case opinion.

On April 10, 2018, Appellant entered open guilty pleas at both dockets in the Heroin Opioid Wellness Court (drug treatment court). N.T. Plea at 1-2. The trial court described drug treatment court as "an intensive rehabilitation program that focuses upon treatment rather than incarceration." N.T. Sentencing, 12/4/18, at 9. "Upon successful completion of that program, the felony counts [would] be reduced to a misdemeanor[,] and the misdemeanor counts [would] be dismissed." N.T. Plea at 2. At the 2016 Case, Appellant pleaded guilty to one count each of possession with intent to deliver (PWID) heroin,[5] possession of marijuana, and possession of drug paraphernalia.[6] At the 2017 Case, Appellant pleaded guilty to four counts of PWID — for, respectively, 1.02 grams of cocaine, 20.1 grams of cocaine, 0.26 grams of heroin, and 21.03 grams of cocaine. *Id.* at 11. Appellant also pleaded guilty to one count of fleeing or attempting to elude an officer.[7]

From January 5 (predating the plea hearing) to September 25, 2018, Appellant appeared before drug treatment court "at least twice a month." Trial

---

[5] At the plea hearing, the parties and trial court referred to the offense of PWID fentanyl. N.T. Plea at 6-7. However, as the trial court notes in its opinion, fentanyl is not a listed controlled substance in the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780-1 to 780-144. *See* 35 P.S. § 780-104 ("Schedules of controlled substances"); Trial Ct. Op. at 7.

[6] 35 P.S. § 780-113(a)(30), (31), (32).

[7] 75 Pa.C.S. § 3733(a). One count of driving the wrong way, 75 Pa.C.S. § 3308(b), was *nolle prossed*. N.T. Plea at 2.

Ct. Op. at 7. However, on September 25, 2018, he was removed from the program for "falsifying employment documents and lying to the treatment court team about his income sources." *Id.* at 1.

On December 4, 2018, the trial court conducted sentencing, after having reviewed the pre-sentence investigation report (PSI). N.T. Sentencing at 9. Appellant had a prior record score of five and three prior PWID convictions — in 2005 and 2008 (cocaine) and in 2012 (heroin)[8] — for which he served state sentences. *Id.* at 3, 6, 12. Appellant was RRRI[9] eligible. *Id.* at 15. The trial court and both parties reviewed the sentencing guidelines for each count in detail and in light of his RRRI eligibility. *See id.* at 3-4 (defense counsel), 7-8 (Commonwealth), 13-14 (trial court). The Commonwealth recommended a total sentence of 36 to 72 months' (or three to six years') imprisonment, comprised of concurrent sentences "at the top of the aggravated range." *Id.* at 4. Defense counsel then argued, however, that the Commonwealth was seeking an aggregate sentence of 3½ to 7 years' imprisonment, but nevertheless agreed such a sentence "is appropriate," as Appellant's "life is not a lost cause." *Id.* at 5.

The trial court considered Appellant's removal from drug treatment court, where he was provided "the opportunity to rehabilitate himself outside

---

[8] Appellant's counsel also stated Appellant had adjudications of PWID "since he was a juvenile going back to 2004." N.T. Sentencing at 3.

[9] Recidivism Risk Reduction Incentive, 61 Pa.C.S. §§ 4501-4512.

of an incarceration sentence despite his extensive criminal record." N.T. Sentencing at 11. However, Appellant "demonstrated a lack of rehabilitative potential and criminal disposition by repeatedly falsifying his employment records and repeatedly lying about them to his probation officer[,] presenting . . . falsified payment slips." *Id.* The court observed Appellant had maintained sobriety, which was "a positive," but the court found he "demonstrated through his deception and false conduct before the Court that his criminal conduct is not just because of addiction but because of criminal thinking and criminal predisposition." *Id.* at 12.

At the 2016 Case, the trial court imposed five to 10 years' imprisonment for PWID, a sentence above the aggravated range and at the statutory maximum.[10] N.T. Sentencing at 15. In announcing this sentence, the court contemporaneously stated Appellant "is a threat to the public and will re-offend again," he "will deal these deadly drugs again in the future unless a very strong message is sent through his sentence," and "therefore we need to separate him from the public to protect the likelihood of dead from Fentanyl toxicity." *Id.* at 14-15.

At the 2017 Case, the trial court imposed the following sentences on the four PWID counts: (1) 18 to 36 months' imprisonment — a standard range

---

[10] At Case 2016, the trial court also imposed: (1) for possession of marijuana, time served to 30 days; and (2) for possession of drug paraphernalia, time served to 219 days' credit. N.T. Sentencing at 15. Appellant's sentencing credit fulfilled these sentences.

sentence — to run consecutive to the sentence at the 2016 Case; (2) a concurrent 18 to 36 months' imprisonment; (3) a consecutive 33 to 66 months' imprisonment —in the aggravated range; and (4) a concurrent 33 to 66 months' imprisonment — in the standard range. N.T. Sentencing at 15-16. For fleeing or attempting to elude police, the court imposed a consecutive nine to 18 months' imprisonment; this sentence was at the top of the standard range. *Id.* at 16. Appellant's aggregate sentence, across both dockets, was thus 10 to 20 years' imprisonment.

Nine months after sentencing, on September 30, 2019, Appellant filed a timely Post Conviction Relief Act[11] petition. On December 4th, the trial court reinstated Appellant's post-sentence and appellate rights. Appellant then filed a post-sentence motion on December 16th, alleging, *inter alia*, the court erred in considering his prior convictions when imposing aggravated-range sentences, as his "criminal history is already considered in the calculation of his prior record score." Appellant's Motion for Reconsideration of Sentence, 12/16/19, at 5 (unpaginated). Appellant also asserted the court failed to state sufficient reasons for imposing "a sentence far beyond the top of the aggravated range" for the PWID count in the 2016 Case. *Id.*

The trial court held a hearing on January 22, 2020. Appellant reported he had 750 days of sobriety and argued, "I don't feel like I'm a lost cause. I

---

[11] 42 Pa.C.S. §§ 9541-9545.

feel like there's a chance for me to change." N.T. Sentence Reconsideration, 1/22/20, at 5. The parties stipulated that Count 2/PWID, at the 2017 Case, should be based on 0.52 grams of cocaine, and not 20.01 grams as stated in the PSI. *Id.* at 2. On this basis, the court amended the sentence, from an 18 to 36-month concurrent sentence, to a 12 to 24 month-concurrent sentence. *Id.* at 9. However, the trial court rejected Appellant's argument that it improperly "double count[ed]" his prior convictions. *Id.* at 10. The court reasoned "[t]his is an ongoing issue . . . in almost any drug case where there is repeat dealing offenses," and the court properly considered Appellant's "remorse and rehabilitative potential." *Id.* The court also denied Appellant's request to modify his sentences that were in or above the aggravated range. *Id.* at 9, 16.

Appellant filed timely notices of appeal at each docket,[12] and complied with the trial court's orders to file Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal.

Appellant presents five related issues for our review:

> I. Whether the Sentencing Court committed an abuse of discretion on Count 1 in [the 2016 Case] by imposing a sentence of 5 to 10 years, which far exceeds the aggravated range maximum of 36 months by two years?

---

[12] Thus, there is no violation of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). **See id.** at 976 (Pa.R.A.P. 341 requires separate notices of appeal from a single order resolving issues spanning more than one docket).

II. Whether the Sentencing Court failed to state sufficient reasons on record for imposing a sentence exceeding the aggravated range on Count 1 in [the 2016 Case]?

III. Whether the Sentencing Court failed to state sufficient reasons on record for imposing aggravated range sentences in [the 2017 Case]?

IV. Whether the Sentencing Court committed an abuse of discretion by considering the prior convictions for drug-related offenses as an aggravating factor when such offenses are already considered in the Prior Record Score?

V. Whether the sentences imposed in [the 2016 and 2017 Cases], resulting in a cumulative sentence of 10 to 20 years in a state correctional institution is clearly unreasonable *in toto*?

Appellant's Brief at 6-7.

In his first issue, Appellant argues the trial court abused its discretion in imposing a statutory-maximum, 5 to 10-year sentence on the PWID/2016 Case, as the sentence "far exceeds the aggravated range maximum of 36 months by two years." Appellant's Brief at 18. Appellant contends the trial court's deviation from the sentencing guidelines is "improper and unreasonable," where the court erred in "primarily rel[ying] upon [his] prior convictions and the dangerousness of fentanyl," as the guidelines already "take into consideration the dangerousness of . . . dealing various substances," resulting in "different offense gravity scores." *Id.* at 21.

Appellant addresses his second and third issues together: that the trial court "failed to state sufficient reasons on the record for imposing" a sentence above the aggravated range and at the statutory maximum for PWID in the 2016 Case and aggravated range sentences in the 2017 Case. Appellant's

Brief at 22. In support, Appellant reiterates the court improperly "'double-count[ed'] factors already included in the sentencing guidelines." *Id.* at 24.

Appellant's fourth issue alleges again that the trial court abused its discretion in considering prior convictions as an aggravating factor. Appellant's Brief at 27. Appellant acknowledges the trial court's discussion that it considered his "past bad acts, not to 'double punish[,'] but to assess his rehabilitative potential" and public safety. *Id.* However, Appellant maintains, the court did not consider "how he performed during his supervision on the prior offenses," and instead "simply focused on the number of times [he] previously committed these offenses." *Id.* at 27, 29.

In his final issue, Appellant incorporates his prior arguments and alleges his cumulative sentence of 10 to 20 years, across both dockets, is manifestly excessive. Appellant's Brief at 33. He also avers the court abused its discretion in ordering some sentences to run consecutively. *Id.* at 36-37. After careful review, we conclude no relief is due.

Appellant's claims implicate the discretionary aspects of sentencing. We note:

> [A]n appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P.

2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

\* \* \*

What constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." A claim that a sentence is manifestly excessive might raise a substantial question if the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence imposed violates a specific provision of the Sentencing Code or the norms underlying the sentencing process.

*Commonwealth v. McLaine*, 150 A.3d 70, 76 (Pa. Super. 2016) (some citations omitted).

Here, Appellant filed a timely notice of appeal and raised these discretionary sentencing claims before the trial court. *See McLaine*, 150 A.3d at 76. Additionally, his appellate brief properly includes the required Pa.R.A.P. 2119(f) statement. *See* Appellant's Brief at 16-17. We thus consider whether Appellant presents substantial questions invoking our review. *See McLaine,* 150 A.3d at 76.

This Court has held the following claims do raise a substantial question: whether the defendant "was sentenced outside of the aggravated range of the sentencing guidelines without sufficient justification from the court," and "[w]hether a court specified specific reasons for an aggravated range sentence." *McLaine*, 150 A.3d at 76 (citations omitted). Additionally, "[a]

claim that the sentencing court misapplied the sentencing guidelines in double counting a prior conviction in its calculation of the prior record score presents a substantial question." ***Commonwealth v. Keiper***, 887 A.2d 317, 319 (Pa. Super. 2005) (citation omitted).

However, with respect to the imposition of consecutive sentences, we have reasoned:

> Generally, Pennsylvania law "affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." . . . ***But see Commonwealth v. Dodge***, [957 A.2d 1198 (Pa. Super. 2008)] (holding consecutive, standard range sentences on thirty-seven counts of **theft-related offenses** for aggregate sentence of 58 1/2 to 124 years' imprisonment constituted virtual life sentence and, thus, was so manifestly excessive as to raise substantial question). "Thus, in our view, the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case."

***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa. Super. 2011) (some citations omitted).

In the case *sub judice*, with respect to Appellant's total five PWID counts and sole fleeing or attempting to elude police count, the trial court imposed four terms to run consecutively, and two to run concurrently, for an aggregate sentence of five to 10 years' imprisonment. We decline to find, in this particular case, a substantial question based merely on the consecutive nature of some of the sentences. ***See Prisk***, 13 A.3d at 533. However, Appellant's

claims regarding his aggravated range and above-aggravated range sentences — that the trial court failed to state sufficient reasons on the record and erred in double counting his prior convictions —do raise substantial questions invoking our review. *See McLaine*, 150 A.3d at 76; *Keiper*, 887 A.2d at 319.

We note the relevant standard of review:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

\* \* \*

When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*McLaine*, 150 A.3d at 75-76 (citation omitted). "[W]here the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009).

The Pennsylvania Supreme Court has explained:

It is well established that the Sentencing Guidelines are purely advisory in nature. [T]he Guidelines do not alter the legal rights or duties of the defendant, the prosecutor or the sentencing court. The guidelines are merely one factor among many that the court must consider in imposing a sentence.

\*　　\*　　\*

Likewise, we explained in **Commonwealth v. Mouzon**, . . . 812 A.2d 617, 621 (Pa. 2002) (plurality), that despite the recommendations of the Sentencing Guidelines, "the trial courts retain broad discretion in sentencing matters, and therefore, may sentence defendants outside the Guidelines." The only line that a sentence may not cross is the statutory maximum sentence.

**Commonwealth v. Yuhasz**, 923 A.2d 1111, 1118-19 (Pa. 2007) (some citations omitted).

Finally, we consider:

The sentencing court may, in an appropriate case, deviate from the guidelines by fashioning a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community. In doing so, the sentencing judge must state of record the factual basis and specific reasons which compelled him or her to deviate from the guideline ranges. When evaluating a claim of this type, it is necessary to remember that the sentencing guidelines are advisory only.

**McLaine**, 150 A.3d at 76-77 (citations omitted).

Here, the trial court reviewed Appellant's PSI, and thus we presume it was aware of all appropriate sentencing factors. **See Ventura**, 975 A.2d at 1135. As stated above, at the sentencing hearing, the trial court and both parties reviewed in detail the sentencing guidelines' standard and aggravated ranges for each count. N.T. Sentencing at 3-4, 7-9, 13-14. We observe that that both Appellant and the Commonwealth stated aggravated range sentences were appropriate, and the trial court noted the parties were "pretty close" in their recommended aggregate sentences. **Id.** at 7. Indeed, we note

- 13 -

Appellant's recommended sentence of 3½ to seven years was longer than the Commonwealth's suggested three to six year-sentence. ***See id.*** at 4, 5. Appellant is RRRI eligible, a factor that both parties and the trial court discussed. The trial court considered the parties' arguments and ultimately imposed a total sentence of five to 10 years. The trial court contemporaneously stated reasons on the record for its departure from the sentencing guidelines with respect to the PWID count at the 2106 Case. ***See McLaine***, 150 A.3d at 76-77; N.T. Sentencing at 14-15. We now examine whether, as Appellant avers, the court's reasons constituted an abuse of discretion.

At the post-sentence hearing and in its opinion, the trial court addressed Appellant's claim that it improperly double-counted Appellant's prior convictions. N.T. Sentence Reconsideration at 10; Trial Ct. Op. at 5. The court reviewed the facts of the underlying two dockets:

> Appellant was caught dealing extremely deadly drugs, including fentanyl; when he was caught he fled the police and drove the wrong way down a one-way street, imperiling innocent bystanders; and then, when he was given an opportunity for rehabilitation, he threw it away by falsifying records regarding his income and lying to this Court. [N.T. Sentence at 11-13, 16.] This Court also took into account and placed on the record that . . . Appellant had three prior PWIDs stretching back from 2004 [. ***Id.*** at 11-12.] These facts forced this Court to reason that . . . Appellant would continue to be a potential threat to the safety of the public and lacked the rehabilitative potential necessary to sentence him within the standard guidelines set forth in the PSI. This Court' s reasoning . . . was that . . . Appellant's past propensity to deal drugs, combined with his lies to the treatment court regarding his income, demonstrated that he

- 14 -

would try to support himself by dealing deadly, illegal substances again. . . .

Trial Ct. Op. at 9-10.

The trial court also considered Appellant's opportunity to participate in drug treatment court, and his actions that caused his removal. In drug treatment court, the court

> had the benefit of meeting at least twice a month with . . . Appellant from the date of his conditional admittance into the treatment court on January 5, 2018, to his removal from the treatment court on September 25, 2018. That lengthy period of time gave this Court an excellent chance to weigh . . . Appellant's rehabilitative potential, and this Court found him lacking.

Trial Ct. Op. at 7.

The trial court then reasoned:

> In sentencing . . . Appellant above the aggravated range, this Court considered . . . Appellant's past bad acts, not to "double punish" . . . Appellant, but to assess his rehabilitative potential, the impact of his crime on the community, and how the sentence can best serve public safety. [Appellant] was sentenced on two dockets after being removed from the Heroin Opioid Wellness Court program. Both were for [PWID] either heroin or cocaine or fentanyl. The sentencing transcript shows the sentencing court considered . . . Appellant' s rehabilitative potential, the impact of his crimes on the community, and the general public welfare as well as the sentencing guidelines provided by the York County Probation Department. [N.T. Sentence at 13-14.]

> The sentencing court demonstrated awareness and incorporation of the sentencing guidelines when it stated the standard and aggravated range sentences on the record. [N.T. Sentence at 14.] During . . . Appellant' s reconsideration of sentence hearing, the [court] further made it clear that sentencing . . . Appellant above the aggravated range was the best course to follow given his penchant for crimes that pose a grave threat to the community of York. [N.T. Sentence Reconsideration Hearing at 14.]

- 15 -

Trial Ct. Op. at 5-6.

After review of the certified record, the notes of testimony of the plea, sentencing, and post-sentence proceedings, the trial court's opinion, and both parties' briefs, we do not find an abuse of discretion in the sentences. It is clear the court did not impose aggravated range and above-aggravated range sentences solely on the fact Appellant had several prior PWID convictions. Instead, the court properly considered Appellant's prior convictions of the same offense — PWID, in 2005, 2008, and 2012 — **as well as** his removal from drug treatment court, due to falsification of income documents, within the framework of Appellant's rehabilitative needs and the protection of the community. *See McLaine*, 150 A.3d at 76-77; *Yuhasz*, 923 A.2d at 1118-19. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/29/2021